JOHN M. AVERY, RESPONDENT, *v.* GEORGE EVERETT, APPELLANT, IMPLEADED WITH LOUISA EVERETT.

*Civil death — effect of, on property rights, of sentencing a person to imprisonment for life —* 3 *R. S.* (6*th ed.*), 994, *secs.* 40, 42 — *when word "death" means natural death.*

A testator devised and bequeathed all his real estate to his wife so long as she should remain unmarried and his widow, but on her decease or remarriage, then what remained he gave and devised to his son Charles. In case his son Charles should die without children, then after his wife's death and his son's death, he gave all the property that remained to a nephew. On October 14, 1875, the son was sentenced to imprisonment in the State prison for life on a conviction of murder in the second degree. The widow died on September 28, 1878.

*Held,* that the civil death of the son, occasioned by his sentence to imprisonment for life in a State prison, did not under 3 Revised Statutes (6th ed.), 994, section 40, vest the title to or the right to possession of the property in the nephew.

That the testator intended by the word "death," natural and not civil death.

APPEAL by the defendant George Everett from a judgment entered upon the decision of the court, on a trial before the court without a jury, at the Cayuga Circuit.

*William Tiffany,* for the appellant.

*Rhodes, Coon & Higgins,* for the respondent.

HAIGHT, J.:

This is an action in ejectment brought to recover the possession of lands. The facts were agreed upon, and are in substance as follows: John H. Southwick died seized of the lands in question on the first day of September, 1869, leaving him surviving his wife Eliza Ann Southwick, his son Charles H. Southwick, and some other children. He left a last will and testament, which was subsequently admitted to probate as a will of real and personal estate. So much of it as is material is as follows: " I give and bequeath to my beloved wife Eliza Ann, all my household furniture and all the rest of my personal property, after paying from the same the several legacies already named to be her's forever. I also give, devise and bequeath to my beloved wife Eliza Ann, all

my real estate as long as she shall remain unmarried and my widow, but on her decease or remarriage then what may remain of said real or personal property I give and devise to my son Charles H. In case my son Charles H. should die without children, then after my wife Eliza Ann's death and my son Charles H.'s death, my will is, all the property, real or personal, that may remain shall go to Augustus Southwick, of Pennsylvania, my brother Nathan's son." Eliza Ann Southwick, the widow, resided upon the real estate until her death September 28, 1878. Charles H. Southwick was convicted of the crime of murder in the second degree, and on the 14th day of October, 1875, sentenced to imprisonment in the State prison at Auburn for the term of his natural life, where he ever since then and now is confined on such sentence, and has never had any children. Augustus Southwick and wife, on the 7th of November, 1881, executed and delivered to the plaintiff a deed of the real estate in question. The defendant George Everett is in possession of the premises under a parol lease from Charles H. Southwick. Louisa Everett is his wife and the daughter of Eliza Ann Southwick. The court below held and decided that the plaintiff was entitled to recover the possession of the lands.

A question is raised in reference to the construction of the will. It, perhaps, is not free from difficulty. We have not found it necessary to give this branch of the case a careful examination. The parties concede that if Charles is alive he took an estate in possession of the premises on the death of his mother, and that, at most, it can only be defeated in case of his death without children. Assuming this to be the case, it then remains to be determined whether or not the contingency has happened. Has Charles died without children? Section 40 (3 R. S. [6th. ed.], 994) provides that: "A person sentenced to imprisonment in a State prison for life, shall thereafter be deemed civilly dead." It thus becomes necessary to determine what is meant by the term "civilly dead." Section 42 of the same statute provides: "No conviction of any person for any offense whatever (except upon an outlawry for treason as hereinbefore provided), shall work a forfeiture of any goods, chattels, lands, tenements or hereditaments, or of any right or interest therein." So that even though he may be sentenced to imprisonment for life and deemed civilly dead, no forfeiture takes

place of any of his rights or interests in lands.   Charles H. South-wick has brothers and sisters living.   Augustus Southwick is his cousin, and is not, therefore, his heir-at-law.   If Charles had not been sentenced to imprisonment for life, he, upon the death of his mother, would have been entitled to the possession of the premises and to their use and enjoyment; and if he should die leaving children him surviving, the interest of the plaintiff would cease and determine.   If the plaintiff is entitled to recover, it is upon the ground that Augustus Southwick, by reason of the civil death of Charles H., became vested with the fee absolute to the land. So that in case Charles should subsequently be pardoned, or should escape to a foreign country, marry and have children, neither he nor his children, on his death, could take or regain the premises. This result, it appears to us, would be in the nature of a forfeiture, which the statute prohibits.

At common law there appears to have been a distinction between civil death as applied to a person who has entered into religion and become a monk professed, and civil death as applied to one con-victed of a felony.   A person who had entered into a monastery and become a monk, renounced all secular concerns and claimed an exemption from the duties of civil life and the commands of the temporal magistrates.   The policy of the law was not to suffer persons to enjoy the benefits of the law who secluded themselves from it and refused to submit to its requirements.   For these reasons a monk was considered absolutely dead in law and his estate would go to his heir.   He might make a testament and appoint executors, or if he made none, the ordinary might grant adminis-tration to his next of kin as if he were actually dead intestate. His executors and administrators had the same power to maintain actions for debt as they would in case he were naturally deceased. He was so effectually dead in law that a lease made even to a third person during the life of one who afterwards became a monk, determined by his entry into religion.   (1 Black. Com , 132 ; Coke upon Littleton, § 200.)

Whilst a person attainted of felony and adjudged to imprison-ment for life, was considered *civiliter mortuus,* his disability was not considered to be the strict civil death that attaches to persons entering into religion or who have been banished the realm.   He

·could not bring an action or enjoy his property, but he could be charged in a civil suit and be compelled to plead to the merits ; he was under the protection of the law, so that to kill him without warrant would be murder. He could acquire, even though he could not enjoy. He could purchase lands to him and his heirs, and could lease and demise, and his estate would not descend to his heirs. (*Bullock* v. *Dodds*, 2 Barn. & Ald., 268–275 ; *Doe* v. *Pritchard*, 5 *B. & Adol.* 765, see opinion of Denman, C. J. ; *Kynnaird* v. *Leslie*, 1 Com. Pleas Law R., 389 ; *Platner* v. *Sherwood*, 6 Johns. Ch., 118–127.)

The statute of the 29th of March, 1799, provided that in all cases where any person should be duly convicted or attainted of any felony thereafter to be committed, and adjudged to imprisonment for life in the State prison, he shall be deemed and taken to be civilly dead to all intents and purposes in the law. Chancellor Kent, in commenting upon this statute, in the case of *Troup* v. *Wood* (4 Johns. Ch. R., 248), says : " I apprehend that the act of March, 1799, was only declaratory of the existing law and enacted for greater caution. Lord Coke says : That every person attainted of felony or who is banished for life, or having committed felony abjures the realm, is *extra legem positus*, and is accounted in law *civiliter mortuus*." In the case of *Platner* v. *Sherwood* (*supra*), the chancellor again refers to this question, and his remarks in the case of *Troup* v. *Wood*, and states that he did not pursue the subject to the extent that he should have done ; that he has since had the benefit of a full and able discussion, and of a diligent and accurate research upon the question. Particular stress is laid upon the concluding clause of this statute, " to all intents and purposes in the law," and he appears to have reached the conclusion that the statute did change the common law in that regard. Under this statute, it was held where a defendant in a cause is sentenced to a state prison for life, he is considered as civilly dead and a suit against him is abated. (*Graham* v. *Adams*, 2 Johns. Cas., 407.) That a pardon would not affect the administration upon his estate, but would restore him to the relation of father and give him the right to the custody of his infant children. (*Deming* v. *Daniels*, 10 Johns., 232.)

On the adoption of the Revised Statutes, the statute of 1799 was repealed, and section 40, above quoted, enacted in its stead. Under

this statute he is deemed civilly dead; the words " to all intents and purposes in the law " have been stricken out.

It appears to us that this change was for a purpose; that the object of the statute was to place a person under imprisonment for life under no greater disability than existed at common law. That this is the effect of the decision of the Court of Appeals in the case of *Davis* v. *Duffie* (reported in 1 Abbott N. Y. Ct. of App. Dec., 486), it seems to us there can be no doubt. It held that the service of a process upon a convict in a State prison was valid and gives the court jurisdiction. If he is dead to the extent that his personal property passes to his administrators, and his real estate descends to his heirs, should not his creditors pursue the personal representatives? Under a recent statute he may now testify as a witness upon civil or criminal trials, and in the discretion of the court a writ of *habeas corpus* may issue to take him from prison for that purpose. He is also under the protection of the law and any injury to his person not authorized is punishable in the same manner as if he was not under sentence.

The statute in force at the death of Mrs. Southwick also provided that a person entitled to claim lands after the death of another person having a prior estate, may petition the court for an order that the person upon whose life such prior estate depends may be produced and shown, to the end that it may be determined as to whether or not the person having the prior estate is still alive, and if it shall appear that the person entitled to the prior estate is in prison, a writ of *habeas corpus* may issue to bring out the body of such person, and if it shall appear that he is still alive and his identity established, that fact shall be entered in the minutes of the court, and the party petitioning for the order shall pay the costs, etc. If, however, it shall be found that he is actually dead, then the petitioner shall be awarded the possession of the premises. (See tit. 8, chap. 5, part 3 of the R. S.)

If Augustus Southwick should institute proceedings under this statute, it appearing that Charles is confined in prison, a writ of *habeas corpus* would issue to produce his body. His body being produced and identified, it would become the duty of the court to discharge the proceedings and to order the costs of the proceedings to be paid by the applicant.

Although this statute in much detail makes provision for a careful inquiry as to the death of the person entitled to the prior estate, it in no place contains any provision for the awarding of the possession of the lands because of civil death. Thus by implication we are led to infer that no such thing was intended. These provisions, with some changes, are now embraced in the Code (§§ 2302–2319).

The remarks of BALCOM, J., at Special Term, in the case of *Freeman* v. *Frank* (10 Abb. Pr. R., 370), to the effect that the rights and liabilities of a person civilly dead are as entirely gone as though he were actually dead, was *obiter* and not well considered.

If we are correct in our conclusion that under the Revised Statutes the disability caused by civil death is no greater than the disability existing at common law on the part of persons attainted with felony, then we regard the case of *Platner* v. *Sherwood* (*supra*) as controlling upon the question here presented. The civil death is not such a death as would cause the real estate to descend to heirs. If not, then the civil death of Charles would not operate to vest the fee in Augustus Southwick, or entitle him to the possession of the premises.

Again, whilst this view of the meaning of civil death makes it unnecessary to further construe or interpret the will, still we can hardly believe that the testator in providing for the transmission of the estate to Augustus Southwick, on the death of his son Charles, without children, had in contemplation his civil death. True, he was bound to know the law and perhaps did understand that a person convicted of murder and sentenced for life would be deemed civilly dead, but in the construing of wills words must be given their ordinary meaning, except where some other is necessarily or clearly indicated. The word death, as used in wills, is ordinarily intended to mean natural death.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

BARKER and BRADLEY, JJ., concurred.

So ordered.